# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-738 (JFB)
_____

CARMINE GRAZIANO,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

_____

**MEMORANDUM AND ORDER**
January 25, 2013
_____

JOSEPH F. BIANCO, District Judge.

Petitioner Carmine Graziano ("Graziano" or "petitioner) petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2255, to vacate his conviction for arson and conspiracy to commit arson. In the alternative, petitioner requests an evidentiary hearing on the issues raised in the motion. Specifically, petitioner argues the following: (1) his trial counsel was ineffective for failing to challenge the superseding indictment regarding the adequacy of the aiding and abetting pleading; (2) his trial counsel failed to file a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, following the government's disclosure of Frank Morrow's recorded telephone conversations; (3) his appellate counsel failed to appeal this Court's summary denial of petitioner's motion pursuant to Fed. R. Crim. P. 29(a) seeking a judgment of acquittal on the first two counts of the indictment; and (4) his trial counsel failed to consult with a forensics expert to contest the government's evidence regarding security camera footage. For the reasons set forth below, petitioner's motion is denied in its entirety without an evidentiary hearing.

I. BACKGROUND

A. Factual Background

Familiarity with the facts of this case are assumed in light of the Court's earlier memorandum and opinions in this case. *See United States v. Graziano*, 558 F. Supp 2d 304 (E.D.N.Y. 2008); *United States v. Graziano*, 616 F. Supp. 2d 350 (E.D.N.Y. 2008).

1

Petitioner was convicted of arson and conspiracy to commit arson for his role in the August 11, 2003 fire at Roseanne's Cards Galore ("Roseanne's"), a business owned by Anna and Joseph Graham.

The dispute between petitioner and the Grahams began in 1999 when petitioner purchased the business next door to Roseanne's, which had been a bar called Bojangles for the previous sixteen years. (Tr. 135-38.[1]) By the fall of 1999, Graziano renamed the bar Copperfield's Pub ("Copperfield's") and began hosting "College Nights," (*Id.* at 139-40.) Allegations of under-age drinking and drug use augmented a contentious relationship between petitioner and the Grahams. (*Id.* at 141.) Tensions increased when a patron of the bar threw his motorcycle helmet through the window of Roseanne's. (*Id.* at 142, 284.) Other incidents that strained the relationship between Graziano and the Grahams include Graziano brandishing a gun and threatening Anna Graham on two occasions. (*Id.* at 283-86, 291.)

Because of these events, the Grahams installed video surveillance cameras in Roseanne's in the fall of 2000. Petitioner made crude gestures to the camera, and installed a spotlight designed to ruin the picture. In response, Joseph Graham installed a mirror to redirect the spotlight towards Copperfield's. (*Id.* at 149-52.) In 2000 and 2001, petitioner and the Grahams engaged in civil litigation, but by 2002 both parties had suspended their actions. (*Id.* at 153-55, 254-55.)[2]

In the summer of 2003, petitioner began talking to Frank Morrow, a longtime patron of Copperfield's, about the tension with the Grahams. Morrow was a 34-year-old convicted drug dealer, lifelong alcoholic, and a crack user, who had inhabited various rehabilitation clinics and seen psychiatrists for diagnosed mental illnesses. (*Id.* at 512-17, 527-28.) Morrow had been to Roseanne's several times and was familiar with Anna and Joseph Graham. In 1998, after drinking at Copperfield's, Morrow kicked in the front window of Roseanne's before returning to the bar. The Grahams did not file suit. (*Id.* at 528-30.)

Petitioner was aware of Morrow's drug addictions and knew him as an occasional brawler, as he frequented Copperfield's between rehabilitation clinics from 2001 to 2003. Petitioner complained to Morrow on three or four occasions about his problems with the Grahams, particularly the increased police presence that was hurting his business. (*Id.* at 530-31.) In or about July 2003, petitioner asked Morrow if he could help remedy the situation. Morrow believed that petitioner was asking him to assault the Grahams, and initially declined. (*Id.* at 531.)

Morrow then enlisted the help of William Norman, a friend from the Lake Grove Treatment Center, where they had both attended drug and alcohol rehabilitation in 2002. (*Id.* at 532-33.) Norman was a 49-year-old convicted drug dealer and burglar, a lifelong heroin addict, and a diagnosed paranoid schizophrenic. (*Id.* at 443-48.)

---

[1] Citations to "Tr." are references to the transcript of petitioner's jury trial before this Court beginning February 25, 2008.

[2] Anna Graham also filed complaints with other public agencies, including the Nassau County District Attorney and local and state legislators, and assisted one of her tenants in filing at least seven noise complaints against petitioner with the Village of New Hyde Park. By 2003, Anna Graham had also collected signatures from neighborhood residents complaining about Copperfield's, attended a hearing of the New York State Liquor Authority on alleged violations by Copperfield's, and contacted a community organization group on behalf of a family that lived in the apartment above Copperfield's. (*Id.* at 294-98.)

2

Norman agreed to help Morrow set a fire in exchange for $250. (*Id.* at 535.)

On either August 8 or 9, 2003, Morrow returned to Copperfield's and told petitioner that he had a solution. Morrow stated that there was going to be a "small fire." (*Id.* at 536.) They agreed that petitioner would pay Morrow $1000 and that the fire would occur in two or three days. They did not discuss how Morrow would start the fire or Norman's involvement in the plan. As captured by Roseanne's surveillance video, Morrow returned to Copperfield's on the evening of August 9, but petitioner was not there. (*Id.* at 552.)

On the evening of August 10, 2003, Morrow picked up Norman from the Lake Grove Treatment Center and drove them to Brooklyn to purchase heroin. Morrow became "intoxicated" from the heroin and parked the car for at least two hours. (*Id.* at 538-39.) They then drove back to a gas station on Long Island to fill up a plastic container with gasoline. Around 4:00 a.m., Morrow and Norman arrived at Copperfield's. They waited until a motorcycle parked outside left and until there were no other lights on in the building. (*Id.* at 540-41.) Using hooded sweatshirts to conceal themselves from surveillance cameras, Morrow stuffed an oily rag into the container of gasoline and Norman took the container. Morrow grabbed a rock and threw it through the front window of Roseanne's. Norman, after lighting the rag, threw the container through the broken window. (*Id.* at 542-44.)

On the morning of August 11, Morrow met petitioner behind Copperfield's. Petitioner reached out with a handful of money to shake Morrow's hands. Morrow took the money, and Graziano told him he was a "crazy motherf****r" as they parted ways. (*Id.* at 546-47.)

Detective Raymond Kurz with the Nassau County Police Department ("NCPD") Arson Bomb Squad recovered the digital surveillance system from Roseanne's, and Detective James Turner went through the footage contained on the system's hard drive. They were able to extract footage of Morrow and Norman, whose faces were obscured by their hooded sweatshirts, setting the fire at Roseanne's. (*Id.* at 123-24.) Detective Turner determined that the system had an approximate two-day storage capacity, upon which it would begin to overwrite existing footage. Because of this process, only the 47 hours immediately preceding the fire were recovered. (*Id.* at 124-25.) Detective Turner provided a copy of the footage to Detective Brian Kaminski of the NCPD Arson Bomb Squad, who reviewed it and found one other segment in which Morrow appeared, the August 9 visit to Copperfield's. (*Id.* at 734-35.)

Morrow confided in a friend from Alcoholics Anonymous, James Eberle, that he was paid $1000 by a local bar owner to commit an arson. In 2005, Morrow stole mountain bicycles from Eberle, and Eberle went to the police and reported that Morrow was responsible for the fire at Roseanne's. (*Id.* at 706-09.) On February 7, 2007, Morrow pled guilty in the United States District Court for the Eastern District of New York to conspiracy to commit arson, in violation of 18 U.S.C. § 844(n), and executed a cooperation agreement with the government. Norman pled guilty to the same crime on February 8, 2007. On June 28, 2007, federal agents arrested Graziano. (*Id.* at 736-37.)

B. Procedural History

Graziano was indicted on February 14, 2008 on three counts, all relating to the events of August 11, 2003. Count One charged Graziano with conspiracy to

3

commit arson, in violation of 18 U.S.C. § 844(n). Count Two charged Graziano with arson, in violation of 18 U.S.C. § 844(i). Count Three charged Graziano with using a destructive device during a crime of violence, in violation of 19 U.S.C. § 924(c). [3]

At the close of the government's case, Graziano moved for acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied the motion with respect to Counts One and Two of the superseding indictment and reserved decision with respect to Count Three. (Tr. 778-84.) The defense rested and did not renew the motion with respect to Counts One and Two. (*Id.* at 789.)

On March 5, 2008, following a jury trial, petitioner was convicted of all counts contained in the three-count Superseding Indictment. Following the verdict, Graziano renewed his Rule 29 motion with respect to Count Three. Count Three was ultimately dismissed pursuant to Federal Rule of Criminal Procedure 29(c). *See Graziano*, 616 F. Supp. 2d at 374.

Graziano filed his notice of appeal on July 17, 2009, raising five claims, including that the Court erred in admitting evidence of his prior threats and bad acts, three challenges to his Sentencing Guidelines calculation, and that the Court's sentence was procedurally and substantively unreasonable. After hearing oral argument, the Second Circuit issued a summary order affirming the July 1, 2009 judgment of this Court. *United Staes v. Graziano*, 391 F. App'x 965 (2d Cir. 2010) (summary order), *cert denied*, 131 S. Ct. 3046, (2011).

On May 5, 2008, the government supplied recordings of eight telephone calls made by Morrow on April 15, 2008 from the Queens Private Correctional Facility. (Letter from Evan C. Williams as to Carmine Graziano to Judge Bianco Re: Enclosed Disk with Records, *United States v. Graziano*, 07-CR-508, ECF No. 94.) On May 10, 2008, after reviewing the calls, defense counsel wrote to the government requesting that the government: (1) preserve and subpoena all recorded telephone calls which Morrow placed from jail, and (2) provide all such calls to the defense. Additionally, counsel sent a self-made transcript of the calls to the government, as well as to the Court. On May 14, 2008, counsel wrote the government again and expanded their request for all recordings containing exculpatory or impeachment material, and on May 21, 2008, moved the Court to direct the government to disclose all recordings included in their May 14 demand. (Letter Concerning Disclosure of Frank Morrow's Recorded Telephone Calls, *United States v. Graziano*, 07-CR-508, ECF No. 93.) On June 20, 2008, after oral argument, the Court directed the government to turn over the requested tapes (or in the alternative, turn over all tapes). (*United States v. Graziano*, 07-CR-508, ECF No. 98.) The government supplied counsel with approximately 225 recorded tapes on August 4, 2008. (Letter Providing Post-trial Discovery, *United States v. Graziano*, 07-CR-508, ECF No. 100.) The Court twice granted counsel's request to extend the deadline to notify the Court of their intention to seek Rule 33 relief, and on September 19, 2008, counsel renewed their demand to receive all of Morrow's recorded telephone calls. On October 14, 2008, defense counsel submitted a letter to the Court indicating that they had reviewed the

---

[3] Prior to trial, the government filed an *in limine* motion providing notice of its intention to offer evidence of prior threats and bad acts by Graziano. On March 20, 2008, after Graziano responded to the government's motion, the Court issued a written decision finding the evidence admissible. *See Graziano,* 558 F. Supp. 2d at 323.

4

telephone call recordings with petitioner, and would not be seeking Rule 33 relief, but preserved the right to do so in the future if new evidence were discovered. (Notice of Intent Not to File a Rule 33 Motion, *United States v. Graziano*, 07-CR-508, ECF No. 110.)

Petitioner now brings this claim of ineffective assistance of trial counsel, pursuant to 28 U.S.C. § 2255.

II. STANDARD OF REVIEW

A. Section 2255 Petition

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). With respect to ineffective assistance of counsel claims under § 2255, the Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

With respect to the issue of an evidentiary hearing, Section 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255. On this issue, the Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has set forth detailed guidance on how a district court should determine whether a hearing is necessary. *See id.* at 213–15. In particular, the Court noted that, given the absence of pre-motion discovery in a Section 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court under Rule 6 of the Rules Governing Section 2255 Proceedings." *Id*. at 213–14.

In the instant case, applying the above-referenced standard, this Court determines that no evidentiary hearing is warranted because petitioner's motion and the record of this case conclusively demonstrate that he is entitled to no relief under Section 2255. With respect to the first three claims of ineffective assistance of counsel – namely, the failure of his attorney to adequately raise the aiding and abetting argument, the Rule 33 motion in connection with Morrow's recorded telephone conversations, and the Rule 29 motion on Counts One and Two – they are not based on any facts outside the record and are clearly frivolous arguments for which no ineffective assistance of counsel claim can possibly exist. The Court can also conclude, without an evidentiary hearing, that his fourth claim – namely, the claim of ineffective assistance of counsel for

5

failing to call an expert to contest government testimony regarding the recoverability of surveillance footage – is equally meritless because (1) the materials now supplied by petitioner do not establish that the government testimony was unreliable, and (2) even if an expert could have been found to dispute the government testimony about the recoverability of the video, it was not objectively unreasonable for counsel to not pursue that strategy in light of the defense at trial, nor was there any evidence suggesting such an expert would have changed the outcome of this case. Thus, even if petitioner's unsupported factual assertions were true, they would not present a plausible claim of ineffective assistance of counsel. Accordingly, an evidentiary hearing on any of petitioner's claims is unwarranted.

### B. Ineffective Assistance of Counsel

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id*. at 588 (quoting *Strickland*, 466 U.S. at 690-91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id*. (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilty.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695. "'An error by counsel, even if

6

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F. 3d 84, 91 (2d Cir. 2007) (internal citation and quotation marks omitted).

With respect to claims of ineffective assistance of appellate counsel, a criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395–96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland* for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). As noted *supra*, under the Strickland standard, a petitioner alleging ineffective assistance of appellate counsel must prove both: (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz*, 269 F .3d 78, 95 (2d Cir. 2001); *Mayo*, 13 F.3d at 533–34.

Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001).

This Court proceeds to examine petitioner's claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

### III.   DISCUSSION

Petitioner alleges four grounds of ineffective assistance of counsel. First, petitioner claims that he was improperly convicted on Count Two of the indictment based on counsel's failure to challenge the facial sufficiency of the indictment, which petitioner asserts did not adequately plead "aiding and abetting," and that this failure led to a constructive amendment of the indictment. Second, petitioner alleges that counsel's failure to file a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, following the government's disclosure of Morrow's recorded telephone conversation in which Morrow purportedly claimed to have perjured himself during trial, amounts to ineffective assistance of counsel. Third, petitioner claims that counsel should have filed a motion pursuant to Federal Rule of Criminal Procedure 29(a) requesting a judgment of acquittal on the first two counts of the indictment (arson conspiracy and arson). Fourth, petitioner claims that counsel should have utilized a forensics expert to contest the government's

7

evidence regarding the security camera footage.[4]

As set forth below, the Court concludes that petitioner's claim of ineffective assistance of counsel is without merit. With respect to the first *Strickland* requirement, petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. In any event, even assuming *arguendo* that the first requirement has been met, petitioner has not satisfied the second requirement because, even if counsel had performed the actions petitioner believes he should have, there is no reasonable probability that the result of the proceedings would have been different.

A. Application

1. Failure to Challenge Indictment Regarding Aiding and Abetting

Petitioner alleges that his attorney should have challenged the sufficiency of the indictment because the inclusion of an aiding and abetting charge led to a constructive amendment of the indictment. (Pet'r's Mem. at 17-23.) Additionally, petitioner alleges that the government failed to make its intention to prosecute under the theory of aiding and abetting known, and further failed to prove specific intent to aid and abet the arson. (*Id.* at 17.) In particular, petitioner contends that the statutory citation to aiding and abetting in Count Two that appeared in parentheses following the charging language "gave no inkling that Petitioner was to be charged with or prosecuted for aiding and abetting or intending to aid and abet an arson." (*Id.* at 21.) As set forth below, this argument is completely without merit. The citation in the indictment was more than sufficient to put petitioner on notice of the aiding and abetting theory. In any event, it is clear from the record that petitioner was made aware that the government intended to prosecute on an aiding and abetting theory. In short, there was no constructive amendment to the indictment, and counsel was not ineffective for failing to raise this frivolous argument.

Ordinarily, an indictment is "sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974) (citations omitted). "In order to satisfy these requirements, 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Heredia*, No. 02 CR. 1246, 2003 WL 21524008, at *3 (S.D.N.Y. July 3, 2003) (quoting *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002)).

"An indictment is *constructively* amended when its terms 'are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. Mucciante*, 21 F.3d 1228, 1233-34 (2d Cir. 1994) (quoting *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir. 1988)) (additional citations omitted). "To prevail on a constructive amendment claim, petitioner must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was

---

[4] In his reply, petitioner additionally alleges that the sentence imposed by the Court violates Due Process, addressed *infra* n.9.

8

the subject of the grand jury's indictment." *United States v. Stewart*, 101 F. App'x 845, 848 (2d Cir. 2004) (summary order) (quoting *United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998) (per curiam)); *see also United States v. Mucciante,* 21 F.3d at 1233.

Furthermore, "the inclusion of an aiding and abetting charge to the jury will rarely, if ever, constructively amend an indictment because an aiding and abetting charge is arguably implicit in every indictment." *Mucciante,* 21 F.3d at 1234. In fact, the federal aiding and abetting statute, 18 U.S.C. § 2, "does not penalize conduct apart from the substantive crime with which it is coupled." *Mucciante,* 21 F.3d at 1234 (citing *United States v. Kegler,* 724 F.2d 190, 200-01 (D.C. Cir. 1984) ("While aiding and abetting might commonly be thought of as an offense in itself, it is not an independent crime under 18 U.S.C. § 2. . . . The indictment need not specifically charge a violation of 18 U.S.C. § 2.")). Accordingly, a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2 as long as the government has indicated to the defendant that it intends to prosecute on such a theory. *See, e.g., United States v. Mayo,* 14 F.3d 128, 132–33 (2d Cir. 1994); *United States v. Damsky,* 740 F.2d 134, 140 (2d Cir. 1984). When an indictment specifically charges a violation of 18 U.S.C. § 2, a defendant is undoubtedly on notice of his potential liability as an aider and abettor. *See United States v. Hill*, 279 F. App'x 90, 95 (2d Cir. 2008) (holding that phrase "together with others" and citations to 18 U.S.C. § 2 were sufficient to put defendant on notice that he faced aiding and abetting liability).

Petitioner argues that the mere use of a parenthetical in his initial indictment to reference the aiding and abetting statute is insufficient to provide notice that he faced liability under an aiding and abetting theory, and that the government never expressly made its intention to prosecute on such a theory known to petitioner. (Pet'r Mem. at 21.)

In response, the government argues that, in addition to the citation to the aiding and abetting statute in the indictment (as well as the language in Count Two that said "together with others"), it is clear from other portions of the record that petitioner was on notice that the government's theory of prosecution was aiding and abetting. (Gov't Mem. at 39-40.) For example, in a detention letter that was filed just nine days after the indictment and many months prior to the trial, the government made its aiding and abetting theory abundantly clear to the Court and to petitioner. (*See* Letter from AUSA Evan C. Williams to Hon. Michael L. Orenstein, *United States v. Graziano*, 07-CR-508, ECF No. 6 ("By August 2003, the defendant was desperate to be rid of Roseanne's owners. An eyewitness will testify that the defendant found an individual who was willing to start a fire at Roseanne's, and promised the person cash. Following the fire, the defendant paid the individual for burning the store.").) In fact, the government notes that petitioner's proposed jury charge, filed on February 28, 2008, contained a proposed aiding and abetting instruction.

The Court agrees with the government. As a threshold matter, the Court holds that a defendant "may be convicted of aiding and abetting the commission of a crime where the indictment refers to 18 U.S.C. § 2 but does not track the language of that statute." *Virella v. United States*, 750 F. Supp. 111, 115 (S.D.N.Y 1990). In any event, not only was petitioner on notice from the indictment that he would be prosecuted under a theory of aiding and abetting, but it was abundantly

9

clear – to both the Court and the defense – from the government filings prior to trial that the government was pursuing an aiding and abetting theory of prosecution.

Because the indictment adequately pled aiding and abetting and the indictment was not constructively amended, counsel's failure to challenge the facial sufficiency of the indictment was objectively reasonable. In any event, because the constructive amendment argument lacks merit and would ultimately have been denied by the Court, petitioner suffered no prejudice, and has thus failed to satisfy the second prong of *Strickland*.

Additionally, petitioner alleges that, if he had been properly indicted under an aiding and abetting theory, he could not have been found guilty of assisting a crime of arson if his only participation occurred after the event itself. (Pet'r Mem. at 22.) This argument, however, is completely unfounded. The jury was instructed that petitioner could not be found guilty of aiding and abetting the arson for providing assistance after the crime occurred. (T. at 943-44.) Petitioner cannot challenge the jury's decision that he assisted with the commission of the crime before it was completed solely because he disagrees with their factual determination. As discussed below, that factual determination was fully supported by the evidence presented by the government at trial, which the jury clearly credited.

2. Motion for New Trial Under Rule 33

Petitioner alleges that his attorney was ineffective for failing to seek a new trial pursuant to Fed. R. Crim. P. 33, after the government disclosed a recorded telephone conversation in which trial witness Frank Morrow told his father that he would claim that he perjured himself at trial.[5] (Pet'r's Mem. at 23-27.) However, the Court finds that counsel's performance on this issue was objectively reasonable.

Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court may grant a Rule 33 motion only in "extraordinary circumstances," *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal citation and quotation marks omitted), and only if there exists "'a real concern that an innocent person may have been convicted,'" *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d. Cir. 2001)); *see also United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000) ("Granting Rule 33 motions is not favored and is done with great caution."). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson,* 246 F.3d at 134.

Petitioner cannot satisfy the first prong of *Strickland* because counsel's performance was objectively reasonable. Counsel successfully moved for extensive post-trial discovery and demanded that the government disclose all of Morrow's telephone calls, even those seemingly not relevant to the trial. (Mot. for Disclosure and Resp. to June 20, 2008 Order, *United States v. Graziano*, 07-CR-508, ECF No. 106.) On October 14, 2008, two months after the government disclosed approximately 225 of Morrow's recorded phone calls for counsel's review and five months after the the post-trial litigation began, counsel stated that his co-counsel, "with Mr. Graziano," reviewed

---

[5] A copy of the transcript of the recorded telephone call is attached as Appendix A to petitioner's motion.

10

the recordings and would not be seeking a new trial pursuant to Fed. R. Crim. P. 33. (Notice of Intent Not to File a Rule 33 Mot., *United States v. Graziano*, 07-CR-508, ECF No. 110.) Petitioner alleges that counsel did little more than submit a letter informing the court of Morrow's recorded phone calls. (Pet'r's Mem. at 23.) However, this Court believes that counsel acted both diligently and reasonably in requesting the recorded conversations and took adequate time to review them before deciding that the facts and the case law did not support seeking a new trial. In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691).

"Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991). When there is no indication that the government knew the testimony may have been perjured, as in this case, "a new trial is warranted only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Id* (internal citation and quotation marks omitted).

Other Second Circuit cases have articulated a three-part test for granting a new trial: "1) the recanted testimony be false and material, 2) the jury probably would have acquitted the defendant, and 3) the movant be surprised by the false testimony or be unaware of its falsity until after the trial, and be unable to discover it with due diligence." *Sanders v. Sullivan*, 863 F.2d 218, 226 (2d Cir. 1988) (citing *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987)).

Under either standard, the Court finds that counsel's performance was objectively reasonable because there was no basis to bring a motion. As noted above, counsel diligently sought access to the Morrow recordings and, after reviewing the recordings, determined that no grounds for relief under Rule 33 existed. (*See* Notice of Intent Not to File a Rule 33 Mot., *United States v. Graziano*, 07-CR-508, ECF No. 110 ("My co-counsel Joel Weiss has reviewed with Mr. Graziano the disclosed tapes of Frank Morrow's jail conversations, and based on this review, defendant will not file a Rule 33 motion. This representation is made without prejudice to defendant's right to seek legal relief at some future time in the event that facts are discovered supporting such relief.").)

Thus, it is clear that defense counsel concluded, and the Court agrees, that Morrow's recantation was patently incredible. First, it is well-recognized that recantations must be "looked upon with the utmost suspicion." *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003) (internal citation and quotation marks omitted). More importantly, in this particular case, Morrow's purported recantation was not credible on its face given any reasonable review of the circumstances surrounding the purported recantation, as is evident upon reviewing the conversation. The purported recantation took place during an emotionally charged conversation with his father, in which it is clear that Morrow was emotionally distraught and making a series of fanciful threats (including, among others, recanting his trial testimony) because of his frustration with a lack of response by his father to his situation in the jail.[6] (Letter

---

[6] In the recorded telephone call, Morrow states, "And I am going to that sentencing saying I don't know Carmine Graziano. I give up. They win." (Recorded Call at 1.) Morrow adds, "Cause when I say I perjured myself in a court of law, they're gonna re-

11

Informing Ct. of Frank Morrow's Recorded Telephone Calls as to Carmine Graziano, *United States v. Graziano*, 07-CR-508, ECF No. 91-2 (hereinafter "Recorded Call").) In particular, Morrow claimed that he was being falsely accused of assaulting a jail officer. (*Id.* at 2-5.) Additionally, the unreliability of the threatened recantation is clear from the fact that Morrow talked about recanting portions of his testimony that even petitioner does not allege are false, such as that he and Graziano did not know each other. (*Id.* at 1.) These statements are at odds with the uncontroverted trial evidence and what the defense purported at trial, further demonstrating that "[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with perjury." *United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1989) (internal alteration, citation, and quotation marks omitted). In short, any reasonable attorney reviewing this recording would conclude that the threatened recantation by Morrow was not credible and would not be a valid basis for bringing a Rule 33 motion. Accordingly, counsel's failure to make such a meritless motion was certainly not ineffective.

In sum, the Court concludes that petitioner has failed to demonstrate that counsel's performance in connection with the Rule 33 motion fell below an objective standard of reasonableness. Assuming *arguendo* that the first requirement was met, petitioner has not satisfied the prejudice

---

sentence him. I don't know who that man is. I never started a fire for him. I didn't take two cents from him." (*Id*.) Morrow proceeds to engage in an uncontrolled tirade with his father about his prison situation, begging that his father get him out of jail. (*See id.* at 3 ("Then get me out of here. I've been begging . . . .").) During this outburst, Morrow, among other things, threatens to commit suicide and also wants his father to tell a government agent that he would be happy with 40 years' imprisonment. (*Id.* at 2-4.)

requirement of *Strickland* because, even if counsel had made a motion under Rule 33, the motion would have been denied for the reasons set forth above. Therefore, petitioner's argument that counsel's failure to file a Rule 33 motion was unreasonable is without merit.[7]

### 3. Counsel's Decision Not to Appeal Court's Denial of the Rule 29 Motion

Motions under Rule 29(c) are governed by the same standard as motions under Rule 29(a). Pursuant to Rule 29(a), a district court shall enter a judgment of acquittal as to "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29(c) permits a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). However, as set forth below, "'[a] defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient.'" *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (quoting *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004)); *see also United States v. Tillem*, 906 F.2d 814, 821 (2d Cir. 1990) (stating that motions to challenge the sufficiency of evidence "rarely carry the day").

The standard under Rule 29, as articulated by the Supreme Court, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[7] In his reply, petitioner suggests that he is not simply asserting recantation, but also claiming perjury by Morrow. (Pet'r's Reply at 15.) To the extent that petitioner is claiming perjury apart from the purported recantation, the Court, after analyzing Morrow's demeanor and credibility in light of all the evidence in the case, finds that there is no basis to disturb the jury's determination that Morrow was testifying truthfully.

essential elements of the crime beyond a reasonable doubt.'" *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *accord United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006). In other words, "'[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Temple*, 447 F.3d at 136 (internal citation and quotation marks omitted).

It is important to emphasize that, in evaluating the evidence under this standard, "courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citation omitted); *see also United States v. Florez*, 447 F.3d 145, 154-55 (2d Cir. 2006) ("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court.").

Viewing the evidence in the light most favorable to the government means "drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Allah*, 130 F.3d 33, 45 (2d Cir. 1999). The Court also should not analyze pieces of evidence in isolation, but rather consider the evidence in its totality. *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir. 1993). Finally, "[d]irect evidence is not required; '[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt.'" *Lorenzo*, 534 F.3d at 159 (quoting *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004)). However, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal citation and quotation marks omitted); *see also Temple*, 447 F.3d at 137 ("[I]n passing upon a motion for directed verdict of acquittal, . . . if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted." (internal citation and quotation marks omitted)).

In short, "[w]here a court concludes after a full analysis of the evidence in connection with a Rule 29 motion that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." *Temple*, 447 F.3d at 137 (internal citation and quotation marks omitted; alteration in original).

Petitioner argues that his appellate counsel was ineffective for failing to appeal the Court's summary denial of the Rule 29 motion for acquittal of Counts One and Two. (Pet'r Mem. at 27-36.)[8] Petitioner alleges that, because Morrow's testimony was not credible, counsel should have further litigated the sufficiency-of-evidence issue on appeal. (*Id.*) For the reasons set forth below, those arguments are without merit.

a. Conspiracy to Commit Arson in Violation of 18 U.S.C § 844(n)

Count One charged Graziano with conspiracy to commit arson, in violation of

---

[8] As for Count Three, counsel moved for judgment of acquittal, and upon all parties' submissions and oral arguments, this Court vacated the destructive device charge in Count Three. *See Graziano*, 616 F. Supp. 2d at 375.

13

18 U.S.C. § 844(n). Petitioner concedes that an arson occurred, but denies association with, and participation in, the arson. (Pet'r Mem. at 31-32).

At trial, Morrow's testimony established the existence of an agreement between petitioner and Morrow to set a fire at Roseanne's, and established that petitioner knowingly and willfully aided in the endeavor. Petitioner argues that Morrow's testimony is incredible based on the following reasons: (1) because of the location of petitioner's bar in relation to Roseanne's, petitioner would not have risked a fire; (2) petitioner did not have fire insurance for Copperfield's; (3) there was no video evidence corroborating the meeting where petitioner hired Morrow to commit the arson; and (4) the officer who examined the video surveillance footage may have testified incorrectly. (*Id.* at 33.) However, these determinations all go to the *weight* of the evidence; not its sufficiency. *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989). Additionally, the proper place to challenge a witness's credibility "is in cross-examination and in subsequent argument to the jury," not in post-trial motions, *id.* (internal citation and quotation marks omitted)), unless the considered testimony is incredible as a matter of law, *United States v. Sanchez Solis*, 882 F.2d 693, 696 (2d Cir. 1989).

There were plausible explanations in the trial record for each point petitioner raises, and there was sufficient evidence for the jury to find the testimony credible and to convict petitioner. First, petitioner was told by Morrow that he would set a "small fire." (Tr. 536.) Additionally, there were two firewalls and stairwells between Roseanne's and Copperfield's; thus, petitioner could have believed that Copperfield's would remain unaffected. (Tr. 63.) Furthermore, Morrow's testimony about petitioner's surprise at the actual size of the fire affords this explanation added credibility. Regardless of the explanation, counsel raised each of these three arguments in his closing, yet the jury was not persuaded. (Tr. 871-72.)

As for the lack of video footage evidencing the meeting where Graziano hired Morrow, this alone does not lend itself to insufficiency. Furthermore, counsel thoroughly contested these points at trial, and the jury found the arguments unavailing. (Tr. 552, 870-71.)

Each argument petitioner makes to support his contention that Morrow's testimony was incredible was raised by counsel at trial and thus considered by the jury. These arguments relate to credibility of a witness, not impossibility of an occurrence. Moreover, Morrow's testimony was not the only evidence in the case. His credibility was examined by the jury in light of all the evidence, which included, *inter alia*, the testimony from Anna and Joe Graham about the history of their dispute with the petitioner.

Therefore, counsel's decision not to appeal the denial of Rule 29 motion as to Count One did not fall below an objective standard of reasonableness.

b. Arson in Violation of 18 U.S.C. § 844(i)

Petitioner argues that counsel should have appealed the denial of Rule 29 motion as to Count Two, which charged Graziano with arson, in violation of 18 U.S.C. § 844(i). In this case, the evidence clearly satisfied the elements of arson. As discussed *supra*, at trial, the government presented evidence that petitioner hired Morrow and paid him to start a fire at Roseanne's. Petitioner's arguments that Morrow's testimony alone is insufficient to establish the elements of the offense are without

14

merit. First, even if the jury relied solely on Morrow's testimony, "a conviction may be supported only by the uncorroborated testimony of a single accomplice" and the conviction will not be reversed "if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990) (citation omitted). Second, the government presented several other witnesses to establish petitioner's guilt, and the credibility of these witnesses was a matter for the jury to decide. Furthermore, counsel continuously raised arguments regarding Morrow's credibility throughout the case, thus, acting reasonably in choosing not to appeal the Court's summary denial of the Fed. R. Crim. P. 29(a) motion with regard to Count Two of the indictment.

Petitioner has failed to establish that counsel acted unreasonably in choosing not to appeal the Court's summary denial of petitioner's Rule 29 motion for acquittal of Counts One and Two of the indictment. Assuming *arguendo* that counsel had raised the motion, petitioner would not have been prejudiced, because the motions would have been denied for the reasons discussed above.

### 4. Counsel's Decision Not to Call an Expert to Contest Government's Evidence of the Surveillance Video

Petitioner claims, in a supplemental argument, that counsel's decision not to call an expert to rebut Detective Turner's testimony regarding the recoverability of Graham's surveillance video footage constituted ineffective assistance. (Pet'r Mem. at 46; Pet'r Reply at 18-22.) Specifically, plaintiff speculates that defense counsel could have found an expert in computer forensics to rebut Detective Turner's testimony that he was only able to recover 47 hours of video footage from the Grahams' surveillance system because the video was automatically overwritten every 48-hours. (*Id.*) As set forth below, this argument is without merit.

As a threshold matter, petitioner has failed to provide any evidence to support his speculation. Petitioner argues that the materials he attached to his memorandum of law demonstrate that the video footage outside Roseanne's could have been recovered. (Pet'r's Mem. at 46; Pet'r's Reply at 19.) However, those materials are a collection of unsworn assertions from unknown sources, as well as several immaterial newspaper articles, which provide no support for his conclusory assertion.

With respect to the newspaper articles, these relate to the problems at the Nassau County Crime Lab; petitioner further alleges that his research shows "problems" with the Nassau County Police Department's crime laboratory, thereby discrediting Detective Turners' testimony. (Pet'r's Mem. at 46.) The issues raised in these articles are immaterial to the instant case. Nowhere in the record is it stated that this crime laboratory was involved in analyzing the hard drive that contained the video surveillance, and petitioner offers no such evidence. To the contrary, as the government notes, Detective Turner testified that he worked in the computer crimes section of the Department (not the crime laboratory), and that the Grahams' hard drive was retained by the computer crimes squad (not the crime laboratory). (Tr. 120, 123.) Moreover, the articles attached by petitioner only discuss problems with drug testing at the crime laboratory and do not mention any issues regarding computer examinations. In short, there is no evidence in petitioner's written submission that the crime laboratory was ever involved in analyzing the Grahams' hard drive, and

15

petitioner has uncovered no evidence to place into question Detective Turner's testimony.

Similarly, the e-mail exchanges that petitioner has included in his papers do not establish that Detective Turner's testimony was inaccurate. (Pet'r's Mem. at 51-53.) Instead, the entities responding to these inquiries on petitioner's behalf make clear that they would have to examine the surveillance system in question before drawing any conclusions as to whether the data could be recovered. Thus, petitioner's speculation, conclusory statements, and accompanying attachments provide no evidentiary basis for his factual assertion.

In any event, petitioner has failed to demonstrate that his counsel's decision with respect to this issue was objectively unreasonable. Defense counsel fully exploited the government's lack of video footage corroborating Morrow's account of the days preceding the arson, (Tr. 870-71), and may have made the strategic decision to not try to obtain or recover any lost footage. In fact, the government correctly notes that this very well could have hindered petitioner's arguments because the missing footage may have shown petitioner meeting with Morrow before the fire. In *United States v. Tarricone*, 21 F. 3d 474 (2d Cir. 1993), the Court held that counsel's failure to call a handwriting expert was a strategic choice and did not amount to ineffective assistance because counsel could have decided that the jury would draw the desired conclusions without the aid of an expert. *Id*. at 476. Additionally, petitioner provides no evidence that counsel's decision not to call an expert was made "to advance a particular goal . . . mainly avoiding work." *Pavel*, 261 F.3d at 218-19. Therefore, counsel's decision to not try to find his own expert to dispute Detective Turner's testimony, be it for its forensic accuracy or Detective Turner's credibility, falls well within the realm of objective reasonability.

Finally, even assuming *arguendo* that petitioner satisfied the first prong of *Strickland*, the second requirement has not been met. Even assuming counsel did retain an expert to rebut Detective Turner's testimony regarding the video surveillance, there is no indication that obtaining more footage or attacking Detective Turner's credentials would have changed the outcome of the case. Even if counsel did call an expert and the jury did not credit any of Detective Turner's testimony, the government presented more than sufficient evidence through the other witnesses for the jury to convict petitioner. Therefore, because Petitioner presents no evidence that he was prejudiced by counsel's strategic decision, petitioner's claim also must be denied on this ground.

16

V. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2255.[9] Therefore, the petition for a writ of habeas corpus is denied.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: January 25, 2013
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Evan C. Williams, 610 Federal Plaza, Central Islip, NY 11722.

---

[9] In addition to the four main claims asserted in his petition, Graziano makes a passing reference in his reply to his belief that his appellate counsel's challenge to this Court's sentence was "less than vigorous." (Pet'r's Reply at 9.) To the extent that petitioner is attempting to assert an ineffective assistance of appellate counsel claim in connection with his sentencing issues (or even as to his trial counsel's performance at sentencing), the Court finds this argument to be without merit. Both trial counsel and appellate counsel vigorously and thoroughly argued all of the pertinent sentencing issues, which were rejected by both this Court and the Second Circuit. Petitioner points to no argument that was not made (or could have been made better) by counsel at sentencing or on appeal. Thus, this argument, to the extent it is being raised, has no merit.